CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

OCT 22 2015

JULIA
BY:

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JUSTIN B. COOK, | ) | CASE NO. 7:15CV00483 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| COM[MISSION]ER OF THE VIRGINIA | ) | |
| DEPT. OF CORRECTIONS, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Justin B. Cook, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, against the "Com[mission]er of the Virginia Department of Corrections ("VDOC"); members of the Northwestern Regional Jail Authority; the superintendant of the Northwestern Regional Adult Detention Center ("NRADC");[1] and several other NRADC employees.[2] Cook states that he is a VDOC inmate, but was improperly subjected to various conditions at NRADC that would not apply at a VDOC facility.[3] Specifically, Cook alleges that the defendants violated his constitutional rights by depriving him of out-of-cell recreation, bedding, and personal legal materials during several days when he was in segregation; by denying him due process in handling his grievance forms; and by banning inmates from ordering religious or legal publications. Upon review of the record, the court finds that the action must be summarily dismissed.

---

[1] The NRADC is located in Winchester, Virginia, within the jurisdiction of this court. In early October, Cook notified the court that he had been transferred to the Piedmont Regional Jail in Farmville, Virginia. He seeks to amend this action to raise several claims against individuals employed at that facility. Because these claims arose in Farmville, which is not located within the jurisdiction of this court, Cook's motion to amend will be denied. Cook is advised that if he wishes to pursue § 1983 claims concerning events at his current facility, he may do so by filing a separate civil action in the United States District Court for the Eastern District of Virginia.

[2] Cook sues the following NRADC employees: Superintendant James Whitley, Capt. P. Bar, Capt. C. Corbin, Lt. Dove, Sgt. Sandra Keister, Lt. Ridley, and Sgt. Dusing, and Officers Albany, Bowers, and Stewart.

[3] Cook's complaint is docketed in two parts at ECF Nos. 1 and 2.

## I. STANDARD OF REVIEW

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013).

## II. DISCUSSION OF CLAIMS

### A. Claims and Defendants Misjoined

As an initial matter, Cook's complaint should actually be split in sections and refiled as at least two separate civil actions. The complaint joins multiple claims against multiple defendants, with no regard for the restrictions of Rules 18 and 20 of the Federal Rules of Civil Procedure.[4] Because the court concludes that all of Cook's claims in the action must be summarily dismissed under § 1915A(b)(1), however, the court need not further discuss Cook's disregard of the joinder rules.

---

[4] Under Rule 18(a), which governs joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant. However, in order to name other defendants in the same lawsuit, the plaintiff must satisfy Rule 20(a)(2), which governs joinder of parties. Rule 20(a)(2) permits joinder of multiple defendants only where the right to relief asserted against them arises out of the same transaction or occurrence and concerns a common question of law or fact. On its face, Cook's complaint about multiple jail policies and occurrences does not comply with either of these rules.

2

## B. Segregation Conditions

After Cook was found guilty of jail disciplinary infractions, authorities placed him in a segregation cell on two occasions: from August 1 to 5, 2015, and from August 22 to 25, 2015. Each day Cook was in segregation, at 7:00 a.m., officers removed his bedding and mattress and all of his legal paperwork and writing and reading materials except one religious book. Cook's mattress, bedding, and other materials were returned to him every night at 11:00 p.m.

Cook alleges that he suffers from severe back and neck pain for which he takes medication. Without his mattress, he had to sit or lie down for hours on bare concrete, which allegedly caused "shooting pains thr[ough] Cook's spine and limbs," as well as anxiety. On August 14, 2015, after his first term of segregation ended, Cook wrote an inmate request complaining that being without a mattress during the days in segregation "caused him pain and discomfort." (ECF No. 2, at 16.) Cook allegedly complained to a nurse on two occasions during his second segregation term that being without his mattress was causing him "severe" back pain, and asked her to make a note in his medical chart. On August 23, Cook filed a written request form stating: "My back is hurting BAD from being on this concrete for the past couple days. I'm not paying $15 dollars to tell the nurse [be]cause it's caused from laying on hard concrete and there's nothing she can do! Please give me a mat to lay on." (ECF No. 2, at 19.) Officer Albany took the form, but did not return the mattress. Officers working later shifts said they never saw Cook's request form. Lt. Dove returned the form to Cook on August 27 with this written response: "You were released from D-Seg on 8-25-15." (Id.)

Officers released Cook from his segregation cell for one hour of recreation each day in a tiny dayroom that contained stools and two telephones. Cook alleges that these areas did not provide space to run or exercise major muscle groups.

3

To the extent that prison living conditions are merely "restrictive or even harsh, they are are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To prove a constitutional claim related to an allegedly harmful jail condition, Cook must show that each defendant knew that the challenged condition presented a substantial risk of serious harm and nevertheless failed to take "reasonable measures" to alleviate it. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). Cook must also "produce evidence of a serious or significant physical or emotional injury resulting from the challenged condition." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

Cook does not state facts showing that two short terms of limited out-of-cell exercise opportunities caused him any serious physical or emotional injury whatsoever. The back pain Cook allegedly suffered from sitting or lying on concrete because of his medical conditions may qualify as serious injury for purposes of an Eighth Amendment claim. He does not, however, state facts showing how any of the named defendants knew of Cook's medical problems during the segregation terms. Cook does not allege making any verbal or written complaints about his back problems during his first term in segregation. During his second segregation term, he allegedly complained to nurses, but expressly did not file a request for them to evaluate his medical conditions, so that they could determine whether he had a medical need for return of his mattress. Without any medical order for Cook to be excepted from the mattress removal policy, the court cannot find that segregation officers knew the policy placed him at any risk of serious harm.[5] Finally, Cook does not state facts indicating that other inmates had previously complained of similar back problems from the mattress policy, so as to put jail officials on notice that it posed a significant risk of serious harm to segregation inmates in general. For the stated

---

[5] It is well established that officers with no medical expertise are entitled to rely on the medical judgment of the prison's medical staff to determine whether an inmate's medical condition warrants a policy accommodation for medical reasons. See Shakka, 71 F.3d at 167 (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)).

4

reasons, the court will summarily dismiss Cook's jail conditions complaints under § 1915A(b)(1), for failure to state a constitutional claim.

### C. Removal of Legal Materials

During his brief terms in segregation, Cook was allegedly preparing his § 1983 action and litigating an appeal and a habeas corpus petition. He had access to his legal materials and writing utensils only between 11:00 p.m. and 7:00 a.m., which was also the only time when he had bedding on which to sleep. Cook also complains that jail policy allowed him to possess only five sheets of paper and five envelopes at a time, which restricted his ability to write letters without begging officials for more writing materials. Cook asserts that these jail policies violated his right to access the court and communicate with family.

As a prison inmate, Cook retains certain First Amendment rights, including the right to send and receive mail and to access the courts. See gen. Lewis v. Casey, 518 U.S. 343 (1996); Thornburgh v. Abbott, 490 U.S. 401 (1989). Because "the judiciary is ill equipped to deal with the difficult and delicate problems of prison management," however, the Supreme Court "has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." Thornburgh, 490 U.S. at 407-08 (internal quotations and citation omitted). Thus, to state a claim of denial of access the courts, Cook must present facts showing that a jail regulation caused actual harm to his ability to litigate a particular, viable legal claim. Casey, 518 U.S. at 356-57. Cook has made no such showing here. He fails to identify any legal claim he sought to litigate or any specific harm his litigation efforts suffered as a result of the temporary property limitations imposed on him while in segregation.

5

Furthermore, Cook fails to state facts showing that he suffered any deprivation of his right to communicate with family or friends. He does not describe any letter that he was unable to write or send because of the limit on paper and envelopes he could possess. In fact, the NRADC website indicates that the jail's policy allows inmates to send and receive an unlimited amount of mail, provided that each piece of mail includes his first and last name. See http://www.nradc.com/inmate-information/inmate-mail-rules (last read Oct. 19, 2015). For the reasons stated, the court will summarily dismiss Cook's claims concerning the temporary removal of his legal paperwork and writing materials while in segregation.

### C. Policy against Ordering Publications

Cook alleges that the jail has a policy prohibiting inmates from ordering any books or magazines, including legal publications, such as Prison Legal News, and religious publications. Cook does not offer a copy of such a policy, and the NRADC website does not mention one. Cook filed a request form in mid-August 2015, stating: "I want to order books and magazines like Prison Legal News, religious materials and fitness book." (ECF No. 3, at 7.) The responding officer stated that he was not sure inmates were allowed to order publications and told Cook to check with Sgt. S. Keister. Cook then filed a grievance addressed to the superintendant about this and other matters; the superintendant responded on August 26, 2015, that all jail policies had been approved by the VDOC. Cook does not allege taking any further action toward seeking to order any particular publication while he was incarcerated at NRADC.

A jail policy prohibiting inmates from ordering and receiving publications withstands a constitutional challenge if it is "reasonably related to legitimate penological interests." Thornburgh, 490 U.S. at 413 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). A local jail like the NRADC primarily houses inmates only temporarily during criminal proceedings or short

6

terms of confinement. Allowing inmates to order books or magazine subscriptions would often present financial and delivery-related complications when the requesting inmate was released or transferred to the VDOC before delivery of the item he had ordered. Thus, a policy denying jail inmates the opportunity to order items through the mail during temporary jail terms is reasonably related to preventing such complications. Accordingly, the court concludes that Cook has failed to show how the temporary inability to order a book or publication violated his constitutional rights.[6]

## D. Grievance Procedures

Cook also complains that the NRADC grievance procedure is ineffective. Inmates must ask for forms, and officers often try to resolve problems without providing the forms. Cook also alleges that he did not receive timely responses to several request forms he filed and was not satisfied with the grievance responses he received. He asserts that these shortcomings in the process violate his constitutional rights. He is mistaken.

Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Consequently, inability to participate in an existing grievance procedure or unsatisfactory responses to grievances do not state any constitutionally significant claim and are not actionable under § 1983. Therefore, Cook's claims concerning the NRADC grievance procedure will be dismissed under § 1915A(b)(1) as factually and legally frivolous.

---

[6] Cook asserts broadly that the publications "ban" prevented him from obtaining legal and religious books. Because he fails to show any harm to his litigation efforts, he has stated no claim that the alleged ban violated his right to access the courts. Casey, 518 U.S. at 356-57. Similarly, Cook fails to show how a temporary inability to order religious publications substantially burdened his ability to exercise his religious beliefs and thus states no free exercise claim related to this policy. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (finding that policy infringing on inmate's free exercise rights is constitutional if reasonably related to legitimate penological interests).

7

## III. CONCLUSION

For the reasons stated, the court will dismiss Cook's complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim or as frivolous. The clerk will send a copy of this memorandum opinion and the accompanying order to plaintiff.

ENTER: This 22nd day of October, 2015.

/s/ G. Conrad
Chief United States District Judge

8

Case 7:15-cv-00483-GEC-RSB   Document 12   Filed 10/23/15   Page 8 of 8   Pageid#: 74